IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 1, 2015

**STATE OF TENNESSEE v. TIMOTHY W. PATRICK**

**Appeal from the Criminal Court for DeKalb County**
**No. 2010-CR-125B    Gary McKenzie, Judge**

**No. M2015-00880-CCA-R3-CD – Filed December 15, 2015**

The Defendant, Timothy W. Patrick, appeals the DeKalb County Criminal Court's order revoking his probation for his convictions for three counts of selling hydromorphone and ordering him to serve the remainder of his effective nine-year sentence in confinement. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

Craig P. Fickling, District Public Defender, and Allison R. West, Assistant Public Defender, for the appellant, Timothy W. Patrick.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Greg Strong, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On December 20, 2010, the Defendant pleaded guilty to three counts of selling hydromorphone. The trial court sentenced the Defendant to three years' probation for each count and ordered consecutive service, for an effective nine-year sentence. On December 12, 2014, a probation violation report was filed with the trial court, alleging that the Defendant failed a drug screen by testing positive for amphetamines and oxycodone on November 21, 2014, and that the Defendant failed to report to his probation officer on November 25, 2014. On December 10, 2014, a probation violation warrant was issued. On February 5, 2015, an

amended probation violation warrant was issued, alleging that the Defendant also tested positive for methamphetamine on November 21, 2014.

At the revocation hearing, Probation Officer Megan Stone testified that she supervised the Defendant's probation. She said her records reflected that the Defendant had four previous probation violation proceedings between December 20, 2010, and April 13, 2015, and that the present revocation proceeding was the Defendant's fifth proceeding. She said that as a result of the last probation violation on July 28, 2014, the trial court ordered the Defendant to restart his nine-year probationary sentence.

Ms. Stone testified relative to the present probation violation allegations that the Defendant failed to report to her office and that when the Defendant finally reported, she required the Defendant to undergo a drug screen. An affidavit of the analyst who examined the Defendant's drug-screen sample stated that the sample was positive for amphetamine, methamphetamine, and oxymorphone.

Ms. Stone testified that the Defendant was released from Smith County custody on September 29, 2014, but that the Defendant did not report to her office until November 21, 2014, after she warned the Defendant a probation violation report would be filed if he failed to report. She said the Defendant knew of his obligation to report to her office because when he was placed on probation, he had to sign determinant release documents stating the conditions of probation.

On cross-examination, Ms. Stone testified that her records did not reflect that the Defendant was released from Smith County custody in November. She said that after the Defendant reported to her office on November 21, 2014, he was scheduled to report to her office again on November 25 but failed to report. She said that it was typical to schedule reporting dates four days apart when a defendant was not complying with the conditions of probation. She noted that the Defendant also failed to report to her office on October 15, 2014.

Sabra Redman, the Defendant's aunt, testified that she and her husband had not offered the Defendant assistance previously because they did not want to witness the Defendant's drug addiction. Ms. Redman said that the Defendant's addiction was the cause of his legal troubles and that she wanted the Defendant to enter a year-long rehabilitation program. She said that she and her husband offered the Defendant a place to live after attending a rehabilitation program, with the understanding that one relapse would result in his eviction. She said she would not tolerate any drug use.

The Defendant testified that he had served about two years of his nine-year sentence. He admitted he had a drug addiction and that his addiction led to his legal troubles. Relative to his failure to report, he said that he was not released from Smith County custody until November 3, 2014. He said he had no knowledge of an October 15, 2014 appointment with his probation officer. He said that after he learned he failed the drug screen, he was arrested on the original probation violation warrant on January 31, 2015. The Defendant said he received the amended warrant a few days later while in confinement. He said that the first warrant did not list the correct probation officer and identified Christopher Miles as the defendant. The Defendant said that the second warrant identified an additional drug found during the toxicology analysis.

The Defendant testified that after his November 3, 2015 release from custody, his first contact with Ms. Stone was on November 5 or 6. He said that he was supposed to report to Ms. Stone's office within seventy-two hours of his release but that he called Ms. Stone to report he could not travel to Cookeville. He said that the appointment was rescheduled, that he was supposed to meet with a probation officer named Steven, and that the Defendant failed to "make that appointment." He said, though, that he reported on November 21, that Ms. Stone made him undergo a drug screen, and that he failed the drug screen.

The Defendant testified that one of his previous probation violations was the result of criminal charges that ultimately were dismissed. He denied previously obtaining drug treatment and said he had "never been offered it." He said his previous request for the drug court program was denied by the trial court. He requested the court allow him to enter a year-long drug treatment program. He understood a long-term program was a serious commitment and said he was attempting to change his life. The Defendant said that the present probation violation matter was, at most, his third violation.

On cross-examination, the Defendant testified that on February 25, 2011, he pleaded guilty to violating his probation and served one year in jail before returning to probation. He said that on June 26, 2012, he pleaded guilty to another probation violation and served one year in jail before returning to probation. He agreed that on September 16, 2013, he pleaded guilty to a third probation violation and served fifty days before returning to probation. The Defendant said, though, that the underlying charges resulting in the third probation violation were dismissed. The Defendant agreed that on July 28, 2014, he pleaded guilty to his fourth probation violation, that he served one year in jail, and that his nine-year probationary sentence restarted. He agreed that he pleaded guilty to conspiracy to manufacture methamphetamine in Smith County on April 16, 2014, and that the charge was the subject of his fourth probation violation.

The trial court revoked the Defendant's probation and ordered him to serve the remainder of his nine-year sentence. The court credited Ms. Stone's testimony and found by a preponderance of the evidence that the Defendant failed a drug screen by testing positive for oxycodone, amphetamine, and methamphetamine, which violated the conditions of his probation. The court found that the Defendant had previous probation violations. The court stated that a grant of probation was a defendant's agreement to abide by the conditions of probation in exchange for not serving a sentence in confinement and found that the Defendant's current violation warranted serving his sentence in confinement. The court also noted that it was not revoking the Defendant's probation for failure to report but that the basis for the revocation was the Defendant's failing a drug screen. This appeal followed.

The Defendant contends that the trial court erred by revoking his probation. He argues that the weight of the evidence does not support the revocation and that the court "acted too harshly" by requiring him to serve his sentence in confinement. The State responds that the evidence supports the trial court's revoking the Defendant's probation and ordering him to serve the remainder of his sentence. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that on November 21, 2014, the Defendant reported to his probation officer, that he underwent a drug screen, and that the results of the analysis showed the presence of amphetamine, methamphetamine, and oxymorphone. The Defendant admitted at the revocation hearing that he failed the drug screen. We conclude that the record supports the trial court's finding that the Defendant violated the conditions of his probation by failing a drug screen and that the court properly revoked the Defendant's probation. *See*

T.C.A. § 40-35-311(e)(1). Once the court properly revoked the Defendant's probation, it had the authority to order the Defendant to serve the remainder of his sentence in confinement. *See* T.C.A. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE